NOT DESIGNATED FOR PUBLICATION

No. 128,147

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JEREMY GLENN DIXON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; WAYNE SMITH, magistrate judge. Oral argument held January 6, 2026. Opinion filed May 22, 2026. Reversed and remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Bruce D. Mayfield*, of Bruce D. Mayfield, Chartered, of Overland Park, and *Frank P. Gilman*, of Gilman Law Office, of Overland Park, for appellee.

Before WARNER, C.J., HURST and BOLTON FLEMING, JJ.

PER CURIAM: After being pulled over for a traffic violation, Jeremy Glenn Dixon became subject to an investigation for suspicion of driving under the influence. Through that investigation, officers obtained evidence that supported the State's charge against Dixon for driving under the influence. Dixon later moved to suppress the evidence by alleging the deputy lacked reasonable suspicion to transition the traffic stop into a criminal investigation. After a hearing on Dixon's motion to suppress—which was all

predicated on the lack of reasonable suspicion to extend the stop—the district court sua sponte dismissed the driving under the influence charge for lack of probable cause.

On appeal, the State contends—and this court agrees—that the district court erred when its decision went beyond the parties' arguments and it ordered relief not requested on grounds not argued. By dismissing the driving under the influence charge on nonjurisdictional grounds not briefed or argued, the district court deprived the State of its ability to present evidence and argument on the probable cause issue. Accordingly, the district court's dismissal is reversed, and this case is remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this appeal are undisputed, but it is necessary for this court to thoroughly consider the proceedings leading up to the district court's dismissal. Following a traffic stop on September 29, 2023, the State charged Dixon with misdemeanor driving under the influence of alcohol (DUI) and speeding. On March 19, 2024, Dixon moved to suppress evidence, arguing the investigating deputy lacked reasonable suspicion to transition the traffic stop to a DUI investigation, and thus unnecessarily extended his detention in violation of the Fourth Amendment to the United States Constitution. Accordingly, Dixon asked the district court to suppress all the evidence gathered during the DUI investigation.

The State filed a written response and argued the deputy's encounter with Dixon evolved from a traffic stop into a lawful investigatory detention for DUI based on reasonable suspicion that Dixon was driving under the influence. The State argued Dixon's slurred speech, bloodshot eyes, confusion, and nervous behavior, as well as comments from Dixon's wife, supported the deputy's reasonable suspicion of DUI. The district court convened an evidentiary hearing on the motion in April 2024.

*Hearing on the Motion to Suppress*

At the hearing, the district court noted that the purpose was to address Dixon's "motion to suppress for unlawful extension." Defense counsel opened by explaining the motion was "based upon the limitations set forth in K.S.A. 22-2402, and that is the stopping of a suspect. And so we aren't talking about whether there was probable cause to arrest. What we are talking about is in essence the first 30 minutes of the deputy's video."

The State called a single witness—the deputy who stopped and arrested Dixon. The deputy testified about the time and reason for the stop—Dixon driving 82 in a 50 miles-per-hour zone. During the traffic stop, the deputy noticed Dixon would "occasionally slur some of his words" and that some of Dixon's responses seemed "a little off." He also noticed Dixon had "bloodshot eyes." The deputy did not, however, detect an odor of alcohol in the vehicle at any point. While Dixon looked for proof of insurance as requested, the deputy asked Dixon if he had anything to drink that night. At some point, the deputy repeated the question, and Dixon again denied having anything to drink.

The deputy testified that he waited for approximately 5 to 10 minutes while Dixon looked for his proof of insurance. At one point, Dixon's wife made a comment to the deputy that she "can drive home," indicating she was fine to do so. The deputy then asked Dixon to participate in three in-car field sobriety tests, which he testified were "to help build some reasonable suspicion." The deputy then explained each test and how Dixon performed. He stated that he did not arrest Dixon at that time because he did not believe he had probable cause to do so.

After administering the in-car tests, the deputy returned to the patrol car to perform a records check and call for backup. At that point, the deputy believed there was reasonable suspicion to conduct a DUI investigation by having Dixon perform standardized field sobriety tests. After finding no warrants or records concerning Dixon's

3

license, the deputy waited 15 minutes in his vehicle for backup without taking any other investigative actions. After backup arrived, the deputy returned to Dixon's vehicle and learned Dixon had found the proof of insurance on his phone, which the deputy confirmed. Approximately 17 minutes passed between the time the deputy left Dixon's vehicle to check the license and when he returned.

At the hearing, the State's questioning and the defense's cross-examination of the deputy did not extend into what occurred after the deputy asked Dixon to step out of the vehicle, which apparently included standardized field sobriety testing and a preliminary breath test. During the hearing, the State sought admission of the deputy's body-worn camera footage documenting the entire encounter. In recognition of the narrow scope of the suppression hearing, however, Dixon's counsel agreed to admission of the video, but only the portion related to the extension of the stop, and the State agreed with that limitation. The district court confirmed that once additional officers arrived, "[t]hat is outside the scope of the motion."

The State's closing arguments focused on the stated purpose of the hearing—whether there was reasonable suspicion to extend the traffic violation stop to a DUI investigation. Likewise, the defense's closing focused on whether the evidence constituted reasonable suspicion to extend the stop. At the conclusion of the hearing, the district court stated that it would take the case under advisement.

*The District Court's Oral Pronouncement Dismissing the Charge*

The district court announced its ruling at a later hearing where it explained that "the issue is a reasonable suspicion," and based on the testimony and the video, "there was reasonable suspicion, but clearly the stop was speeding." Then the district court appeared to find there was reasonable suspicion to extend the stop: "Then there was

4

reasonable suspicion to inquire of the underlying—if there was an underlying crime of driving under the influence. So I do feel the State has met its burden as far as that goes."

But the district court continued and stated that counsel for Dixon "also made a motion—I don't know if it was in your written motion, but during oral arguments you made a motion, too, about probable cause after the stop." Counsel for Dixon responded by circling back to the basis for the motion: "Well, and the duration that it took." That "[w]as another crux of our argument," counsel noted, "from the stop until the time that the defendant was recontacted."

After stating it felt the State "met its burden" regarding the reasonable suspicion to conduct a DUI investigation, the court continued:

> "[E]ven though you may have a *Terry* stop and the stop is valid and reasonable suspicion and the lower standard, the standard still—it is not preponderance of the evidence which is what I am going to look at, which is what I looked at under the video that I looked at several times."

The district court then discussed the evidence cited by the State—Dixon's slurred speech, nervousness, etc.—and then stated:

> "I know the stop was long, however, based upon that, there isn't enough probable cause for a DUI. Based upon the three tests. Mr. Dixon did past [*sic*] two of the three tests.
> "So at this point Count I is dismissed based upon the evidence presented. The stop was reasonable. The stop for the speeding was reasonable, and I don't think the stop as far as the length of time—he did go back to check as far as getting backup and also Mr. Dixon looking for his insurance information, however, so the *Terry* stop . . . is not being suppressed. It is being suppressed—or dismissed based upon the fact that—of the three tests he took, he did pass two of them."

5

After discussing whether the "length of time" of the stop was appropriate, the court went on to describe Dixon's performance during the in-car field sobriety tests. The court explained that Dixon's nervousness and the comments by Dixon's wife, who was a passenger, were "not enough, I think, for a test to proceed further at this point for driving under the influence. So there is no probable cause for that." The district court then stated, "*Terry* stop is valid, however, the probable cause is not."

The State immediately attempted to clarify the district court's ruling: "Your Honor, I just want to make sure I am understanding correctly. The stop was valid. There is [*sic*] no suppression issues. But there is an issue of PC, but that wasn't raised in the motion to suppress." The district court responded that it believed the probable cause issue was raised through the body camera video and questioning of the deputy:

> "Right. But it was raised during the oral argument. . . . [Defense counsel] cross-examined the officer, the deputy, and said, you know, the stop was for speeding. They showed the video. He passed the hand dexterity test. There was also no issue about the looking for the insurance information. It did take a long time, but he did through the insurance information on his phone so that took a long time and he did find it eventually.
> . . . .
> "So basically, yes, the *Terry* stop. There was no suppression. It is not being suppressed, but there is just not enough evidence for a DUI."

The State insisted that because there was no mention of probable cause in the original suppression arguments, there needed to be a written motion and hearing on the probable cause issue before the district court dismissed the charge.

The rest of the hearing transcript does not provide clarity. The district court said that it "didn't see enough to go further," in discussing its review of the video. The district court also concluded that probable cause had been brought up during the suppression hearing related to the in-car sobriety tests: "There is an issue with Mrs. Dixon, however,

6

there was no issue as far as any admission by Mrs. Dixon as to whether Mr. Dixon was drinking or not. I don't know. But the information we had presented at the hearing ended at that point." The State asked the district court to clarify when the issue of probable cause was raised. The district court said it was raised during defense counsel's cross-examination of the deputy, when he detailed the evidence of impairment—Dixon's slurred speech, nervousness, etc.

In its written order, the district court made several findings of fact describing the stop, the signs of impairment cited by the deputy, and the results of the in-car sobriety tests. The district court explained, "These factors may rise to a reasonable suspicion." The court then stated that although there may have been reasonable suspicion, there was no probable cause: "While these factors may rise to reasonable suspicion, the factors do not rise to the standard of probable cause . . . and for sufficient evidence for a prosecution of DUI." The district court concluded by dismissing the DUI charge for lack of probable cause.

The State now appeals.

DISCUSSION

The State contends that the district court erred when it sua sponte dismissed Dixon's DUI charge for lack of probable cause when neither party made arguments related to probable cause or requested such relief. Accordingly, the State argues that it was not given an opportunity to present evidence supporting probable cause. The State also raises a second issue, arguing the district court erred as a matter of law in concluding that the deputy lacked probable cause to arrest Dixon for DUI.

I. JURISDICTION

An appellate court has a duty to question jurisdiction on its own initiative and must dismiss the appeal if the record shows a lack of jurisdiction. See *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). After hearing oral argument, this court requested that the parties submit supplemental briefing on whether it had jurisdiction to consider the State's appeal under K.S.A. 22-3602(b).

The right to appeal in Kansas is purely statutory, and appellate jurisdiction exists only if a party files an appeal in the manner prescribed by Kansas statutes. *Smith*, 304 Kan. at 919; see also *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010) (explaining the State's right to appeal). The State appeals pursuant to K.S.A. 22-3602(b)(1), which authorizes prosecutorial appeals "[f]rom an order dismissing a complaint, information or indictment." The Kansas Supreme Court has long held that this statute does not allow the State to appeal from the dismissal of some of the counts in a multiple-count charging document while the remaining counts are still pending before the district court. *State v. Freeman*, 234 Kan. 278, 282, 670 P.2d 1365 (1983) (*Freeman I*). Here, the State had charged Dixon with multiple counts; both DUI *and* the speeding infraction. Thus, there were two charges against Dixon at the time of the district court's dismissal.

The State may voluntarily dismiss pending charges to appeal a district court's order dismissing a single count of a multiple-count complaint. See *State v. Clovis*, 254 Kan. 168, 173, 864 P.2d 687 (1993) (noting that the State must dismiss pending charges to appeal); *State v. Bird*, 59 Kan. App. 2d 379, 387, 482 P.3d 1157 (2021) (finding appellate authority when the district court dismissed one count of a multi-count indictment where the district court had granted the State's request to dismiss the other count and thus no pending criminal charges remained).

8

After a review of the parties' supplemental briefing, this court finds that it has jurisdiction. Because Dixon pleaded guilty to the speeding charge before the State filed its notice of appeal, no charges were pending at the time of appeal. See *State v. McDaniels*, 237 Kan. 767, 770, 703 P.2d 789 (1985) (finding appellate jurisdiction under K.S.A. 22-3602 [Ensley 1981] when a sentence has "been imposed or the imposition of the sentence suspended, or the case dismissed prior to trial"); *State v. Freeman*, 236 Kan. 274, 276, 689 P.2d 885 (1984) (*Freeman II*); *Freeman I*, 234 Kan. at 279.

## II. THE DISTRICT COURT ERRED BY DISMISSING DIXON'S DUI CHARGE SUA SPONTE.

The State argues the district court erred by sua sponte raising a nonjurisdictional issue and dismissing the DUI charge against Dixon for lack of probable cause without allowing the State an opportunity to respond to the issue. The State's claim involves the district court's authority to raise and consider an issue sua sponte, the district court's conclusions of law, and the interpretation of statutes—all of which are subject to unlimited review by this court. See *State v. Dooley*, 313 Kan. 815, 819, 491 P.3d 1250 (2021).

It is undisputed that the only issue the parties intended to bring for the district court's consideration was Dixon's motion to suppress, which alleged lack of reasonable suspicion to extend the traffic stop to an investigatory detention. Dixon did not allege the deputy lacked probable cause to arrest him for DUI and thus Dixon made no arguments regarding probable cause. Therefore, neither party submitted briefs to the district court addressing probable cause or made allegations about probable cause at the hearing on Dixon's motion to suppress. Stated another way, Dixon's written motion, the State's written response, and the arguments at the hearing on the motion focused exclusively on whether the deputy had reasonable suspicion necessary to extend the traffic stop to investigate a DUI.

9

In fact, when considering the deputy's body camera footage of the incident, the parties were careful to limit it to the portion related to the demonstration of whether reasonable suspicion existed for extending the stop. When the State requested to admit the body camera footage, Dixon's counsel stated, "Judge, we have no objection . . . . to anything from the point of the stop until the officer about the 34-minute mark returns back to the vehicle. Which is the purpose of this hearing." The district court clarified, "The issue is the stop," and defense counsel responded, "Once backup gets there and he goes to the car to get my client out, that is where we think the video should end." The State agreed, and the district court confirmed, stating, "That is outside the scope of the motion." Defense counsel responded, "Yes."

In considering a motion to suppress, "[t]he judge shall receive evidence on any issue of fact necessary to determine the motion." K.S.A. 22-3216(2). The defendant carries the burden to establish facts that the search and seizure were unlawful. See *State v. Estrada-Vital*, 302 Kan. 549, 557, 356 P.3d 1058 (2015) (interpreting the statute's language to mean a defendant must establish the facts necessary to support his or her suppression motion in the district court). This is true even though "the burden of proving that the search and seizure were lawful shall be on the prosecution." K.S.A. 22-3216(2). Therefore, the scope of the motion to suppress is established by the defendant's arguments. Had Dixon wanted to pursue dismissal for lack of probable cause, he would have needed to raise that in his motion. He did not.

When the district court issued its order that there was a lack of probable cause, the State explained that the issue of probable cause "wasn't raised in the motion to suppress." The district court responded that it believed the issue had been brought up during the suppression hearing and explained:

"[D]uring the argument, during the oral argument, it was raised whether there was enough probable cause because there was an issue about speeding in and of itself is not

10

indicia of bad driving and then there was some issues about NHTSA testing and was there enough for testing. There was the in-car testing, but based upon that, that is not enough, I think, to go further. That is why I did that."

The State asked for additional clarity, and the district court said the probable cause argument was made during the deputy's cross-examination.

A review of the record shows no argument, written or oral, regarding probable cause to arrest Dixon for DUI. The evidence the district court discussed related to the reasons for the traffic violation and reasonable suspicion for extending the stop to begin the DUI investigation. In fact, because the parties intended the district court to only consider the issue posed in Dixon's motion, they intentionally limited the evidence presented at the hearing to only the body-worn camera footage and information the deputy had before he asked Dixon to step out of the vehicle. The court stated that the in-car testing was not enough to arrest Dixon—but that was not the question raised or argued—nor is it the totality of the evidence used to establish probable cause for the arrest. Nor does Dixon even contend the issue was presented to the court.

Dixon's motion exclusively concerned the lawfulness of a different part of his encounter with the deputy, which means the State lacked notice and an opportunity to present evidence to demonstrate probable cause for Dixon's arrest. See, e.g., *State v. Williamson*, 253 Kan. 163, 167-68, 853 P.2d 56 (1993) (finding district court's dismissal without permitting parties to present evidence on the issue improperly imposed on State's authority to prosecute).

Because the arguments and the evidence before the court were limited to the question of reasonable suspicion, the district court's decision to rule on a separate issue improperly stepped outside the court's role of judicial review. "It is error for a district court to raise nonjurisdictional issues *sua sponte*." *Chambers v. Kansas Dept. of Revenue*,

11

No. 115,141 2017 WL 1035442, at *6 (Kan. App. 2017) (unpublished opinion). Thus, the district court's decision to dismiss the case for lack of probable cause was erroneous.

*The motion to suppress is not properly before this court.*

Dixon attempts to salvage the district court's dismissal of his DUI charge by arguing it was right for the wrong reason. Dixon argues that even "[i]f the trial court's articulation of the ruling is a bit unclear, the final result of that judgment is not." He argues this panel should "sustain the trial court's decision to dismiss the State's case by sustaining his Motion to Suppress as a matter of law based on the undisputed evidence available." In other words, Dixon asks the court to find that the district court was right to dismiss the case—not because there was a lack of probable cause, but because of his original contention that the deputy lacked reasonable suspicion to extend the stop into a DUI investigation.

It is true that if a district court reaches the correct result, its decision can be upheld even though it relied on a wrong ground or assigned erroneous reasons for its decision. *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015). However, here, the apparent result of the district court's decision to dismiss for lack of probable cause meant the district court denied the motion to suppress for lack of reasonable suspicion to extend the traffic stop to investigate a DUI. Though Dixon frames his argument as asserting an alternate rationale supporting the district court's decision, it is actually a different query. Whether the deputy had reasonable suspicion to extend a traffic stop to investigate a crime is a distinct legal issue from whether the deputy had probable cause to arrest. Moreover, the State did not have the opportunity to brief on appeal whether the lack of reasonable suspicion should have elicited the same result.

The State only appealed the district court's order dismissing the DUI charge, which did not relate to Dixon's reasonable suspicion argument. Additionally, Dixon did

12

not cross-appeal on the district court's apparent denial of the motion to suppress. See K.S.A. 60-2103(h) (requires an appellee to file a notice of cross-appeal from adverse rulings). Kansas courts have concluded that cross-appeal procedures set forth in K.S.A. 60-2103(h) apply in criminal cases and include "a criminal defendant facing an appeal by the State." *State v. Herman*, 50 Kan. App. 2d 316, Syl. ¶¶ 7-8, 327-29, 324 P.3d 1134 (2014). The absence of a notice of cross-appeal is a jurisdictional bar to review. *Lumry v. State*, 305 Kan. 545, 553-54, 385 P.3d 479 (2016). Thus, the only claim properly before this panel is the propriety of the district court's order dismissing the case for probable cause.

CONCLUSION

Dixon moved to suppress evidence, arguing the deputy lacked reasonable suspicion to extend the traffic stop to an investigatory detention. The district court sua sponte dismissed the DUI charge based on a different legal theory, which required an analysis of different facts under a different standard that were not presented to the district court. The dismissal left the State without notice and an opportunity to present evidence or argument regarding the probable cause to arrest Dixon. Thus, the district court's dismissal was improper. Accordingly, the district court's dismissal is reversed, and this matter is remanded for further proceedings.

Reversed and remanded with directions.

13